# 23-1159-cv

# United States Court of Appeals
### *for the*
## Second Circuit

TERESA MCCOY,

*Plaintiff-Appellant,*

— v. —

THE TJX COMPANIES, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

ALLISON C. LEIBOWITZ
SIMMONS JANNACE DELUCA, LLP
*Attorneys for Defendant-Appellee*
43 Corporate Drive
Hauppauge, New York 11788
(631) 873-4888

CP COUNSEL PRESS  (800) 4-APPEAL • (327517)

**CORPORATE DISCLOSURE STATEMENT**
**PURSUANT TO RULE 26.1 OF THE**
**FEDERAL RULES OF APPELLATE PROCEDURE**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, THE TJX COMPANIES, INC., Defendant/Appellee in this action, states that it does not have a corporate parent, and there is no publicly held corporation that owns 10 percent or more of either company's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT PURSUANT TO
RULE 26.1 OF THE FEDERAL RULES OF APPELLATE
PROCEDURE ....................................................................... i

TABLE OF AUTHORITIES ................................................. iv

PRELIMINARY STATEMENT .................................................. 1

COUNTERSTATEMENT OF THE ISSUES PRESENTED
FOR REVIEW ....................................................................... 1

COUNTERSTATEMENT OF THE CASE .................................. 2

    A.    The Accident ................................................................. 2

    B.    The Security Guard ....................................................... 4

    C.    The Purported Surveillance Video ............................... 5

    D.    The District Court's Dismissal of the Action ............. 6

SUMMARY OF THE ARGUMENT ............................................ 7

ARGUMENT ................................................................................ 9

    I.    STANDARD OF REVIEW ......................................... 9

    II.    THE DISTRICT COURT CORRECTLY DISMISSED
PLAINTIFF'S COMPLAINT ................................... 10

        A.    The Mere Presence of Defendant's Employee is
Insufficient to Raise a Triable Issue of Fact as to
the Issue of Notice ....................................................... 10

    III.    THE DISTRICT COURT CORRECTLY REJECTED
PLAINTIFF'S REQUEST TO DENY TJX SUMMARY
JUDGMENT AS A DISCOVERY SANCTION ..................... 17

        A.    Plaintiff Was Not Prejudiced by the Timing of
the Disclosure of the Security Guard's Identity ............ 17

        B.    Plaintiff Waived Her Argument for Spoliation
Sanctions Under Federal Rule 37(e) .............................. 19

ii

C.      The Record is Devoid of Evidence to Support
        Plaintiff's Claim that TJX Spoliated Surveillance
        Footage of the Accident .................................................. 21

D.      Plaintiff is Not Entitled to the Drastic Relief of
        Denial of TJX's Meritorious Summary Judgment
        Motion Even if Sanctions Could be Warranted
        under Federal Rule 37(e) ............................................... 26

CONCLUSION ............................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

AFL Fresh & Frozen Fruits & Vegetables, Inc. v.
De-Mar Food Services Inc.,
2007 WL 4302514 (S.D.N.Y. Dec. 7, 2007) ............................................ 16

Alexander v. Marriott Intern., Inc.,
2002 WL 1492125 (S.D.N.Y. July 11, 2002) ................................ 12, 13, 14

Allianz Ins. Co. v. Lerner,
416 F.3d 109 (2d Cir 2005).................................................................. 20, 21

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................................... 9

Boccio v. Costco Wholesale Corp.,
2022 WL 970745 (E.D.N.Y. Mar. 30, 2022)............................................. 24

Bogle-Assegai v. Connecticut,
470 F.3d 498 (2d Cir 2006)....................................................................... 20

CAT3, LLC v. Black Lineage, Inc.,
164 F Supp 3d 488 (S.D.N.Y. 2016) ......................................................... 29

Chen v. Holder,
367 Fed Appx 237 (2d Cir. 2010)............................................................. 10

Decker v. Middletown Walmart Supercenter Store,
2017 WL 568761 (S.D.N.Y. Feb. 10, 2017)............................................. 16

Demelio v. Wal-Mart Stores E., LP,
2023 WL 2480192 (S.D.N.Y. Mar. 13, 2023)........................................... 15

Dilworth v. Goldberg,
3 F.Supp 3d 198 (S.D.N.Y. 2014) ............................................................ 21

Duamutef v. O'Keefe,
98 F.3d 22 (2d Cir 1996)........................................................................... 21

Fashion Exch. LLC v. Hybrid Promotions, LLC,
2021 WL 1172265 (S.D.N.Y. Mar. 29, 2021)........................................... 30

Fletcher v. Atex, Inc.,
   68 F.3d 1451 (2d Cir. 1995)........................................................... 9

Gonzalez v. Kmart Inc.,
   2016 WL 3198275 (E.D.N.Y. June 8, 2016) ............................................ 15

Greene v. United States,
   13 F.3d 577 (2d Cir 1994)........................................................... 20

Hammond-Warner v. United States,
   797 F.Supp 207 (E.D.N.Y. 1992) .................................................... 15

Hicks v. Baines,
   593 F.3d 159 (2d Cir. 2010).......................................................... 9

Johnson v. Schindler El. Corp.,
   2008 WL 11474825 (MD Ga Mar. 20, 2008)........................................... 10

Kelsey v. Port Auth. of New York and New Jersey,
   52 A.D.2d 801 (1st Dep't 1976) ........................................... *passim*

La Belle v. Barclays Capital Inc.,
   340 FRD 74 (S.D.N.Y. 2022) ...................................................... 21

Leidig v. Buzzfeed, Inc.,
   2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017) ........................................ 27

Lionel v. Target Corp.,
   44 F.Supp 3d 315 (E.D.N.Y. 2014) .......................................... 11, 12

Miller v. Wolpoff & Abramson, L.L.P.,
   321 F.3d 292 (2d Cir. 2003).......................................................... 9

Moss v. JNK Capital Ltd.,
   211 A.D.2d 769 (2d Dep't 1995), affd, 85 N.Y.2d 1005 (1995)............... 13

New York v. U.S. Dep't of Com.,
   461 F.Supp. 3d 80 (S.D.N.Y. 2020) .............................................. 18

Nunn v. Massachusetts Cas. Ins. Co.,
   758 F.3d 109 (2d Cir. 2014).......................................................... 9

Ortiz v. Wal-Mart Stores E., LP,
   2019 WL 1171566 (S.D.N.Y. Mar. 13, 2019) ...................................... 15

Pappas v. Philip Morris, Inc.,
  915 F.3d 889 (2d Cir. 2019)........................................................ 10

Sachs v. Cantwell,
  2012 U.S. Dist. LEXIS 125335 (S.D.N.Y. Sep. 4, 2012).......................... 23

Stephanides v. BJ's Wholesale Club, Inc.,
  2013 WL 1694901 (E.D.N.Y. Apr. 18, 2013) ........................................ 17

Toussie v. County of Suffolk,
  2007 WL 4565160 (E.D.N.Y. Dec. 21, 2007).......................................... 19

Typhair v. Town of Gouverneur,
  322 Fed Appx 26 (2d Cir 2009)..................................................... 21

Ungar v. City of New York,
  329 FRD 8 (E.D.N.Y. 2018), affd, 2022 WL 10219749
  (2d Cir. Oct. 18, 2022) ....................................... 20, 27, 29, 30

Vega v. Broome County,
  2023 WL 6318919 (N.D.N.Y. Sept. 28, 2023)......................................... 20

## Statutes and Other Authorities:

Fed. R. Civ. P. 26........................................................... 18

Fed. R. Civ. P. 26(g) ....................................................... 18

Fed. R. Civ. P. 37(e) ................................................. *passim*

Fed. R. Civ. P. 37(e)(1)................................................. 27, 29

Fed. R. Civ. P. 37(e)(2)................................................. 29, 30

Fed. R. Civ. P. 56(a) ......................................................... 9

## PRELIMINARY STATEMENT

Defendant-Appellee, THE TJX COMPANIES, INC. (hereinafter "TJX"), respectfully submits this brief in response to the appeal of Plaintiff-Appellant TERESA MCCOY (hereinafter "Plaintiff").

## COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court correctly held that the mere presence of TJX's employee, absent evidence of the duration and apparentness of the alleged hazardous condition, how long the employee was present in the area or affirmative evidence that the employee observed the condition, was insufficient to create a genuine issue of material fact on the issue of notice.

2.      Whether the District Court properly rejected Plaintiff's discovery arguments and request to deny TJX summary judgment as a form of sanction, where:

a.      the identity of the security guard who was on duty at the time of the accident was disclosed before the close of discovery and Plaintiff inexplicably failed to notice the guard's deposition or otherwise seek an extension of the discovery deadline; and

b.      no evidence was proffered that surveillance footage of the accident ever existed to support Plaintiff's argument that TJX engaged in spoliation.

1

## COUNTERSTATEMENT OF THE CASE

**A.    The Accident**

Plaintiff claims that on July 28, 2019, she was caused to fall after attempting to sit on a pair of stools stacked on top of each other located on the sales floor just beyond the front entrance of the Columbus Avenue HomeGoods. A 13, 18:2-23, 44:24 – 45:3. It is Plaintiff's contention that the stools were negligently stacked in such a fashion that they appeared to be a chair or seat and, thus, constituted a dangerous condition. A 18.

Upon entering the HomeGoods store with her walker, Plaintiff focused her attention on the merchandise stocked on display tables and shelving units in the immediate area to her left. A 39:2-23. After turning to look straight ahead, she noticed a "nice-looking" stool for sale and proceeded two to three feet further into the store. A 41:2-18. The square-shaped, wooden framed stool had a light-colored mesh rope covering and four tapered legs. A 42:22 – 43:15, 57:22 – 60:15, 85-86.

Plaintiff claims the stool was standing upright on the floor approximately six inches in front of a display table with other merchandise. A 41:19 – 42:13, 47:22 – 48:2, 60:20 – 61:4, 85-86. Plaintiff would have had a full view of the entire stool as she approached it straight ahead and specifically recalled seeing a large red car on the floor "a couple inches" away from its

legs. A 41:2-18, 46:25 – 48:2, 61:5-13. While standing less than six inches away, Plaintiff examined the stool for a minute to a minute and a half. During this time, she even touched the top of the stool to feel the rope covering with her hand. A 44:6-9, 54:20 – 55:12.

Although her walker with a built-in seat was next to her and a nearby bench located only a few feet away, Plaintiff decided to sit on top of the stool. A 44:14 – 45:3, 73:11-17. As she sat down, Plaintiff felt the stool "sort of just give way" underneath her and topple over, causing her to fall to the ground. A 52:18 – 53:13, 56:6-10. Despite visually and physically examining the stool for at least a full minute before her accident, Plaintiff claimed that she did not realize it was actually two identical stools stacked on top of each other until after she fell. A 44:6-9, 54:2 – 55:12.

Plaintiff does not know who may have placed the stools on the floor and stacked them on top of each other prior to her accident. A 81:5-8. She does not know how long the stools were on the floor in that configuration before her fall. A 80:25 – 81:4. Plaintiff did not see any TJX employees actively stocking merchandise in the area before or after her accident. A 75:24 – 76:16. There were no prior complaints about the stools or the manner in which they were displayed, nor were there any prior similar incidents. A 81:9-17, 151, 155. Additionally, Store Manager Joseph Baglivo and Sales

Associate Arturo Cepeda provided affidavits attesting that they respectively inspected the accident location 40 minutes and 15-20 minutes prior to Plaintiff's fall and did not observe two stools stacked on top of each other on the sales floor. A 150-155.

**B.     The Security Guard**

Plaintiff testified that she observed an individual wearing a security guard's uniform standing near the front doors, which were approximately six to eight feet away from the accident location, prior to her fall. A 49:5 – 50:3. However, she does not know whether he actually witnessed her fall. In fact, Plaintiff could only claim "to the best of her knowledge" that the guard would have been able to see the accident location. A 50:4-8, 66:21 – 67:15.

Plaintiff learned the identity of the security guard, former employee Joe Robertson, during the deposition of TJX's District Loss Prevention Manager Julio Cuba held on June 2, 2022, approximately two weeks prior to the close of fact discovery. A 4, 195:2-15. Despite this fact, she made no attempt to notice the guard for deposition or otherwise seek an extension of fact discovery prior to its close. A 1-5. Instead, Plaintiff allowed the deadline to expire, and a total of two and half months elapse, before finally raising the purported importance of this witness in opposition to TJX's summary judgment motion. Although Plaintiff argued in her opposition the "delayed

4

disclosure" caused her prejudice, she did not explain why it prevented her from pursuing discovery from the guard, nor did she point to any harm otherwise actually suffered.

## C. The Purported Surveillance Video

At her deposition, Plaintiff never claimed that she observed surveillance cameras in the area following her accident or that she was aware of any footage of her fall. A 25-83. Further, Mr. Cuba, a near 20-year employee of TJX and District Loss Prevention Manager for almost a decade, testified unequivocally that no video of the incident exists. A 182:23 – 183:17, 193:9-10, 197:23 – 198:13, 199:4-10.

Only in opposition to summary judgment did Plaintiff offer photographs and declarations from herself and Jon Conner, a former loss prevention store detective employed by TJX whose identity was also disclosed during Mr. Cuba's deposition, as purported evidence that there was a security camera mounted to the ceiling of the store positioned so that it would have captured the incident. A 195:2-15, 233-240. The photographs were undated and the declarations silent as to when they may have been taken. In addition, neither Plaintiff nor Mr. Conner, declared that (1) the photographs reflect the camera's position on the date of the accident; (2) the camera was

functioning and actively recording that day; or (3) any footage of the accident was actually created. A 233-240.

## D.     The District Court's Dismissal of the Action

On July 19, 2023, the District Court dismissed Plaintiff's claims, holding that she failed to point to any evidence that TJX created or possessed the requisite notice of the alleged hazardous condition. A 258-271. In so ruling, the District Court specifically held that "there is no evidence that the security guard actually observed that the stools were improperly displayed" and that "[t]he mere assertion that the security guard 'was in a position to see the area where the stools in question were located,' is insufficient to create genuine issue of material fact regarding whether Defendant had actual notice of the hazardous condition." [citations omitted] A 263. Similarly, under its analysis of constructive notice, the District Court concluded "the mere presence of Defendant's employee, absent evidence of how long the employee was present in the area or affirmative evidence that the employee observed the condition, is insufficient to create a genuine issue of material fact regarding constructive notice." A 265-266.

The District Court also summarily denied Plaintiff's requests for sanctions based on the "delayed disclosure" of the security guard's identity

and claim that TJX engaged in spoliation with respect to surveillance of the accident. A 267-271.

Specifically, the District Court reasoned that "[b]ecause Plaintiff learned the identity of the security guard before the close of discovery, and could have, but did not, notice the guard's deposition or otherwise seek an extension of the discovery deadline, Plaintiff has failed to demonstrate that she was prejudiced by the delayed disclosure." A 269. As for the purported surveillance video, the District Court concluded that the record before it, including the Declarations and accompanying photographs, failed to demonstrate any such footage ever existed. Accordingly, it dismissed Plaintiff's contentions as "pure conjecture." A 270.

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed Plaintiff's Complaint due to her inability to establish a *prima facie* case of negligence against TJX. In an attempt to overturn the District Court's decision, Plaintiff heavily relies on a near 50-year-old appellate decision from the First Department for the proposition that the mere presence of a TJX employee in close proximity to the complained of hazard is sufficient to establish notice of the condition. In doing so, she ignores with seeming purpose the Appellate Court's findings that this alone is insufficient in the absence of evidence that the alleged hazard

was visible and apparent for an appreciable period such that it could be discovered and remedied by said employee, proof of which is decidedly absent here.

In reaching its decision, the District Court also properly rejected as meritless Plaintiff's request for common law discovery sanctions, including denial of TJX's right to dismissal as a matter of law, based on a claimed late disclosure of a witness and spoliation of surveillance depicting the accident.

Unable to challenge the District Court's clear findings that no prejudice was suffered by the disclosure due to Plaintiff's own inexplicable decision not to seek the witness's deposition prior to the close of discovery, Plaintiff seemingly abandons any argument on appeal and instead uses the issue only to make baseless accusations of impropriety against TJX. As for the purported surveillance, Plaintiff merely points to the same speculative evidence which fails to even establish that relevant footage existed, let alone support a cognizable claim that it was spoliated. In the process, Plaintiff also attempts to advance a brand-new argument for spoliation under the Federal Rules never raised before the District Court which, if not deemed waived, still fails to provide sufficient grounds to restore her legally unviable claim against TJX.

In light of the aforementioned, the Judgement of the District Court should be affirmed.

## ARGUMENT

## I.   STANDARD OF REVIEW

The standard of review of both a motion for summary judgment and motion to dismiss is *de novo*. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003). Furthermore, "[s]ummary judgment is appropriate where the record reveals that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Nunn v. Massachusetts Cas. Ins. Co., 758 F.3d 109, 114 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56[a]) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Significantly, a party cannot overcome summary judgment, by relying on " 'mere speculation or conjecture as to the true nature of the facts' " because " 'conclusory allegations or denials…cannot by themselves create a genuine issue of material fact where none would otherwise exist.' " Hicks v. Baines, 593 F.3d 159 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451 (2d Cir. 1995)).

## II. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFF'S COMPLAINT

### A. The Mere Presence of Defendant's Employee is Insufficient to Raise a Triable Issue of Fact as to the Issue of Notice

Plaintiff argues the mere fact that she claims a security guard was "very close" to the stools prior to her accident constitutes sufficient evidence to establish notice. In support, Plaintiff relies almost exclusively upon Kelsey v. Port Auth. of New York and New Jersey, 52 A.D.2d 801 (1st Dep't 1976).[1] This reliance is misplaced.

In Kelsey, the First Department upheld a trial verdict in favor of plaintiff who slipped and fell while descending a staircase inside a building owned and operated by the Port Authority defendant. As correctly alluded to by Plaintiff, the Appellate Division noted in its decision that "[a] building attendant was present at the scene just prior to the accident" and found that, "[u]nder such circumstances, the jury could reasonably conclude that the

---

[1] The only other case law relied upon by plaintiff as support for Kelsey is a decision from the Middle District of Georgia, Johnson v. Schindler El. Corp., 2008 WL 11474825 (MD Ga Mar. 20, 2008). Its interpretation of Georgia substantive law is irrelevant and the decision wholly devoid of precedential value. See Chen v. Holder, 367 Fed Appx 237 (2d Cir. 2010) (unnumbered footnote reminding counsel that cases from other circuits are not binding precedent in the Second Circuit Court of Appeals); see also Pappas v. Philip Morris, Inc., 915 F.3d 889, 893 (2d Cir. 2019)("[A]s a general matter, a federal district court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits.").

dangerous condition which caused plaintiff's injury was not properly observed or, although observed, not cleaned." Id. at 802.

Plaintiff would like this Court to believe that the building attendant's presence at the scene was the sole reason the Kelsey court found adequate evidence in the record to support the jury's finding that the defendant had sufficient notice of the staircase's condition and a reasonable opportunity to remedy same. However, this is inaccurate.

What Plaintiff neglects to mention is that the record in Kelsey also included evidence establishing the duration for which the alleged hazard existed in the stairwell, and that it was both visible and apparent. Specifically, the plaintiff in Kelsey testified that she observed "cigarette butts, paper cups and wetness on two steps of the stairway" 15 to 20 minutes before she slipped and fell on the same stairway. Id. at 801. It was this testimony, coupled with the presence of the building attendant, which led the Kelsey court to conclude that sufficient evidence existed to support the jury's finding that the defendant possessed constructive notice of the alleged condition. See also Lionel v Target Corp., 44 F.Supp 3d 315, 322 (E.D.N.Y. 2014) (noting that Kelsey was "decided based on evidence in the record establishing the time frame of how long the hazard had been present.").

Analysis of the few cases which directly rely upon <u>Kelsey</u> for this specific theory of notice only further confirms that a plaintiff must not only establish the close proximity of a defendant's employee to the complained of condition, but also proffer evidence that the alleged hazard was visible and apparent for an appreciable period such that it could be discovered and remedied by said employee.

For instance, in <u>Alexander v Marriott Intern., Inc.</u>, 2002 WL 1492125 (S.D.N.Y. July 11, 2002), plaintiff claimed that defendant possessed constructive notice of a wet condition in the foyer of its bathroom that caused him to slip and fall. In support, plaintiff submitted an affidavit from a non-party who attested to observing a puddle of water on the floor of the same foyer twenty minutes prior to plaintiff's accident <u>and</u> seeing several employees of defendant "traversing said area on multiple occasions" during this time. <u>Id.</u> at *3. Citing to <u>Kelsey</u>, the court denied summary judgment on the basis that plaintiff introduced legally sufficient evidence to establish constructive notice on the part of defendant. <u>Id.</u>; <u>compare</u> <u>Lionel</u>, <u>supra</u> at 321 (Distinguishing <u>Kelsey</u> and granting defendant summary judgment on the basis that "there is no evidence in the record indicating how long the food container lid remained on the floor prior to Plaintiff's fall, in order to establish that the hazard was not properly observed or, although observed, not cleaned"

by a Target employee); Moss v JNK Capital Ltd., 211 A.D.2d 769 (2d Dep't 1995), affd, 85 N.Y.2d 1005 (1995) (granting defendant summary judgment where plaintiff contended that two employees were working in the vicinity of the half-eaten plum she slipped upon but could only speculate that plum had been on the floor for an appreciable period of time).

Here, in contrast to Kelsey, supra, and Alexander, supra, there is no evidence establishing a time frame for the existence of the alleged hazardous condition. Indeed, Plaintiff herself does not know how long the stools were on the floor in the stacked configuration before the accident. A 80:25 – 81:4. Moreover, multiple inspections conducted by employees less than an hour prior to Plaintiff's accident did not reveal the presence of the stacked stools. A 150-155. Nor were any reports of prior complaints or accidents received by the store. A 81:9-17, 151, 155.

There is also no evidence establishing how long the security guard was present in the area or if he actually observed that the stools were improperly displayed. While repeatedly asserted by Plaintiff in her appeal as a foregone conclusion (ex. "[the guard] was able to see the area where the stools were stacked" and "the security guard was close enough to the stools to see that they were improperly stacked"), she could only claim "to the best of her knowledge" that the guard would have been able to see the accident location

when questioned under oath at her deposition. Appellant's Br. 12, 14; A 50:4-8, 66:21 – 67:15. As correctly noted by the District Court when granting TJX summary judgment, "the mere assertion that the security guard 'was in a position to see the area where the stools in question were located' is insufficient to create a genuine issue of material fact." [citations omitted] A 263.

Assuming, *arguendo*, Plaintiff was able to marshal evidence establishing that the stools were stacked for an appreciable period, which Plaintiff cannot do, it is clear from the record that the condition was not visible and apparent. As conceded by Plaintiff, she inspected the stools herself from mere inches away for at least a full minute and did not realize they were stacked until she decided to sit down on them. A 44:6-9, 54:2 – 55:12. This is starkly different from Kelsey, supra, and Alexander, supra, in which testimony was submitted that the respective conditions of "cigarette butts, paper cups and wetness" and a "puddle of water" were clearly appreciated by the plaintiff, or someone else, prior to the resulting accidents. See also Kelsey at 802 ("It is noted that we are not concerned here with a latent or dormant condition."). Even Plaintiff's own argument that the guard failed to immediately remedy the "situation" in accordance with his training despite his close proximity, in fact, only further establishes that the stacked stools

14

were not visible and apparent. Appellant's Br. 14-15; See Demelio v. Wal-Mart Stores E., LP, 2023 WL 2480192, at *5 (S.D.N.Y. Mar. 13, 2023) ("But the fact that Wal-Mart employees were in the vicinity and did not react to the spill—as they are trained to do—counsels against finding the condition was visible and apparent.").

Significantly, the aforementioned is consistent with other court decisions which do not directly cite Kelsey, but address the same or similar notice arguments rooted in the purported presence of a nearby employee of the defendant. See Ortiz v. Wal-Mart Stores E., LP, 2019 WL 1171566, at *7 (S.D.N.Y. Mar. 13, 2019)("While Plaintiff is correct that there is evidence that there were three of Defendant's employees in the area of the dangerous condition prior to the accident, this alone is not enough to show that Defendant had constructive notice."); Gonzalez v. Kmart Inc., 2016 WL 3198275, at *5 (E.D.N.Y. June 8, 2016) ("The mere fact that a Kmart employee may have been close to the spill at the time Plaintiff fell is insufficient to create an inference that the employee saw the spill before the accident or was present long enough before Plaintiff's fall to have had the opportunity to cure the hazardous condition."); Hammond-Warner v. United States, 797 F.Supp 207, 212 (E.D.N.Y. 1992)("the mere proximity of employees is insufficient grounds on which to establish constructive notice.").

Plaintiff's secondary contention, largely relegated to a footnote, that the District Court erred in giving weight to the "implausible" affidavits of Mr. Baglivo and Mr. Cepeda is equally misguided and designed only to distract the Court.

Indeed, as noted by the District Court, Plaintiff is unable to point to any inconsistencies or contrary evidence in the record to rebut Mr. Baglivo and Mr. Cepeda's testimony, under penalty of perjury, that they last inspected the accident location approximately 40 minutes and 15 to 20 minutes prior to Plaintiff's fall, respectively, and did not observe stacked stools. A 262, 266. Thus, the argument is wholly conclusory and must be disregarded as such. See generally AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Services Inc., 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007)("unsupported denials, without more, cannot create disputes of material fact").

Even if the District Court should have credited Plaintiff's contentions and disregarded the affidavits, it would not warrant a different outcome as TJX is not obligated to present evidence of a recent inspection in order to be entitled to summary judgment. See Decker v. Middletown Walmart Supercenter Store, 2017 WL 568761, at *9 (S.D.N.Y. Feb. 10, 2017)("Because the federal burden of proof applies, Defendant was not required to produce evidence of the last time the area was inspected or

cleaned, but need only point to Plaintiff's lack of evidence and inability to raise a genuine issue of material fact on the elements of her claim"). Nor would the absence of the affidavits from the record otherwise remedy Plaintiff's clear inability to establish that the stacked stools were visible, apparent and present for an appreciable period necessary to give rise to an inference of notice. See Stephanides v BJ's Wholesale Club, Inc., 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) ("[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant.").

## III. THE DISTRICT COURT CORRECTLY REJECTED PLAINTIFF'S REQUEST TO DENY TJX SUMMARY JUDGMENT AS A DISCOVERY SANCTION

### A. Plaintiff Was Not Prejudiced by the Timing of the Disclosure of the Security Guard's Identity

Although Plaintiff insists the purported knowledge of the security guard is essential to the viability of her claim, and repeatedly implies that TJX purposefully obfuscated and withheld the identity of this individual until after the close of discovery, her legal argument on discovery sanctions is largely silent on this issue. That is because of the inconvenient truth for Plaintiff—the only harm possibly suffered was undeniably self-inflicted.

17

As more fully outlined in TJX's Counterstatement of the Case, *supra*, it is undisputed that (1) the identity of the security guard in question, Mr. Roberston, was disclosed prior to the fact discovery deadline; and (2) Plaintiff inexplicably failed to take any action with respect to this information. A 1-5, 195:2-15. Based on this fact, the District Court correctly found that Plaintiff could not establish the necessary prejudice to merit sanctions for a Rule 26 violation. A 268-269; See New York v. U.S. Dep't of Com., 461 F.Supp. 3d 80, 88 (S.D.N.Y. 2020) ("[S]anctions under Rule 26(g) are not appropriate when a party has not been harmed" by the violation) (collecting cases)).

In light of the seriousness of Plaintiff's accusations, her non-action with respect to the security guard cannot, and should not, be ignored. To date, Plaintiff has yet to address why she permitted the fact discovery deadline to expire, and a total of two and half months elapse, before finally raising the claimed importance of this witness in opposition to TJX's summary judgment motion. Considering Plaintiff had no difficulty securing a declaration from Mr. Conner, whose identity was also disclosed during Mr. Cuba's deposition, the only reasonable inference is that Mr. Robertson was located and deemed to be unfavorable to Plaintiff. A 195:2-15. This serves only to further establish this appeal's total lack of merit and the District Court's conclusion that the

arguments submitted by Plaintiff in opposition, both substantive and discovery-based, were unavailing.

## B. Plaintiff Waived Her Argument for Spoliation Sanctions Under Federal Rule 37(e)

As evident from the District Court's decision, Plaintiff advanced an argument that TJX violated the common law doctrine of spoliation by failing to preserve purported surveillance footage of her accident. A 267-271. Indeed, in her underlying papers, Plaintiff cited to <u>Toussie v. County of Suffolk</u>, 2007 WL 4565160 (E.D.N.Y. Dec. 21, 2007) for the prerequisites for the imposition of sanctions for spoliation of evidence (control of the evidence, culpable state of mind and relevancy) and further argued, unsuccessfully, that all three elements were satisfied.[2]

On appeal, Plaintiff now seeks to argue a different legal standard for spoliation under Federal Rule 37(e), which specifically governs the handling of Electronically Stored Information ("ESI"). Significantly, there is absolutely no reference to Federal Rule 37(e) or ESI in Plaintiff's opposition to TJX's summary judgment motion. Consequently, the District Court did not reach any findings as to whether the Rule is even applicable in this matter, let alone

---

[2] <u>See</u> ECF Doc. No. 35. A copy of Plaintiff's Memorandum of Law in Opposition is also available for submission to the Court upon request.

that Plaintiff presented sufficient evidence that did, or did not, satisfy its elements. A 258-271.

"[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." Greene v. United States, 13 F.3d 577, 586 (2d Cir 1994). While the Second Circuit has the discretion to consider waived arguments, "circumstances normally 'do not militate in favor of an exercise of discretion to address ... new arguments on appeal' where those arguments were 'available to the [parties] below' and they 'proffer no reason for their failure to raise the arguments below.'" Bogle-Assegai v. Connecticut, 470 F.3d 498, 504 (2d Cir 2006) (quoting Allianz Ins. Co. v. Lerner, 416 F.3d 109, 114 (2d Cir 2005)).

It is clear that Plaintiff did not present any argument with respect to Rule 37(e) in the District Court notwithstanding its availability.[3] Moreover, it cannot be argued that the District Court's analysis of Plaintiff's common law arguments is equally transferable to her new claim under Federal Rule 37(e). See Vega v. Broome County, 2023 WL 6318919, at *5 (N.D.N.Y. Sept. 28, 2023)("Spoliation of ESI is now governed by Rule 37(e) of the Federal Rules

---

[3] Indeed, Rule 37(e) has existed in its present form since 2015. See F.R.C.P. 37(e); Ungar v. City of New York, 329 FRD 8, 12 (E.D.N.Y. 2018) (noting that the present version of Rule 37(e) came into effect on December 1, 2015).

of Civil Procedure and is subject to a slightly different analysis as compared to spoliation of tangible evidence.").

No explanation is provided, nor does one exist, as to why Plaintiff waited until appeal to raise this contention for the first time. As such, Plaintiff's argument with respect to Rule 37(e) should be deemed waived. See Typhair v. Town of Gouverneur, 322 Fed Appx 26 (2d Cir 2009); Allianz Ins. Co. v. Lerner, 416 F.3d 109 (2d Cir 2005); Duamutef v. O'Keefe, 98 F.3d 22 (2d Cir 1996).

### C. The Record is Devoid of Evidence to Support Plaintiff's Claim that TJX Spoliated Surveillance Footage of the Accident

Regardless of whether this Court decides to evaluate the sufficiency of Plaintiff's spoliation argument under the common law, as originally presented, or Rule 37(e), it ultimately lacks merit and, thus, was properly rejected by the District Court.

Significantly, a party seeking sanctions under either theory of spoliation must establish that the evidence at issue actually existed. La Belle v. Barclays Capital Inc., 340 FRD 74, 82 (S.D.N.Y. 2022)(noting that under Rule 37(e), "a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed."); Dilworth v. Goldberg, 3 F.Supp 3d 198, 202 (S.D.N.Y. 2014)("The (common law) spoliation doctrine is predicated on evidence actually existing and being destroyed"). As correctly adduced by the

District Court, Plaintiff is unable to overcome this initial threshold requirement. A 270.

Here, the appeal merely reiterates the same conclusory arguments regarding the Declarations of Plaintiff and Mr. Conner, and undated photographs submitted therewith, already deemed insufficient by the District Court to establish the existence of footage depicting the accident. A 270.

To wit, the Declarations of Mr. Conner and Plaintiff do not declare that the video camera and security monitor shown in the undated photograph(s) annexed as exhibits were present in the store on the accident date in the same manner depicted. A 233-240. Additionally, Mr. Conner does not aver that the depicted video camera claimed to be connected to the "Store's video recording system" was actively recording on the accident date. A 236. As for Plaintiff's statement in her Declaration that the camera would have recorded her fall and any events prior, it is speculative and conclusory to the extent she provides no personal basis for that knowledge, and it is not otherwise independently supported by the Declaration of Mr. Conner. A 233, 236.

As recognized by the District Court, this evidence, at best, establishes that a camera capturing a live stream of video and transmitting it to a nearby monitor on the sales floor was present inside the Columbus Avenue

HomeGoods on some unknown date, likely years after Plaintiff's accident.[4] A 270. It does not, however, establish that, on the date of Plaintiff's accident, the camera (1) was in this same location; (2) properly functioning; (3) actively recording; and (4) recorded footage of the accident.

Without more, Plaintiff did not, and cannot, meet her initial burden as to the existence of the surveillance video which she claims was spoliated. See Sachs v. Cantwell, 2012 U.S. Dist. LEXIS 125335, *26 (S.D.N.Y. Sep. 4, 2012)("plaintiff has not presented evidence that the camera was attached to a functioning recording device or that a recording was actually created. Based on the evidence before it, the Court cannot infer that a surveillance video ever existed, let alone was destroyed.").

Plaintiff's efforts to muddy the waters with irrelevant facts and conclusory observations does not bridge the obvious gap between the deficient evidence submitted and her contention that video of her accident existed.

For instance, Plaintiff highlights the fact that a banner on the video monitor located near the store's entrance/exit in the undated photograph states

---

[4] The undated photograph was not exchanged until Plaintiff filed her opposition in September 2022. As such, it is reasonable to assume that it was taken around that same period, more than three years after her accident.

"recording is in progress" [5] as circumstantial proof that the camera must have captured her accident. Appellant's Br. 16. Putting aside the picture's lack of any probative value as discussed *supra*, such a conclusion would require one to automatically rule out an obvious and equally probable alternative. That is, the image being displayed on the monitor is not actually being recorded and merely being used as a deterrent for loss prevention purposes.

Similarly unavailing is the testimony highlighted by Plaintiff that there were about 30 cameras throughout the store and "all over the sales floor." Appellant's Br. 16. Indeed, these facts, in and of themselves, do not establish that Plaintiff's accident was captured on surveillance. see Boccio v. Costco Wholesale Corp., 2022 WL 970745, at *3 (E.D.N.Y. Mar. 30, 2022)("In the context of video recordings, the courts have found that the mere presence of a video camera does not establish that the camera was in place to record at the time, nor does its presence establish that any recording was made at the time of the incident.") (collecting cases)).

Plaintiff's attempts to attack Mr. Cuba's testimony are also unpersuasive. Specifically, Mr. Cuba testified that TJX's policy and procedure is to always retain any surveillance video depicting a customer

---

[5] As evident from the photograph, the banner actually reads "Area Recording in Progress."

accident reported to the store. A 191:14-19, 192:17 – 194:8. He further testified in logical fashion that since no video was saved in the surveillance system depicting the accident, it was not captured on camera. A 197:23 – 198:13.

To conclude solely from this testimony, as Plaintiff does, that this lack of video inherently means that it existed, and was not preserved, is nonsensical. As discussed *supra*, there is no evidence that a properly functioning and actively recording surveillance camera was present at the accident location and recorded footage of the stools or Plaintiff's fall that would serve to contradict Mr. Cuba's sworn testimony. Moreover, Plaintiff has not adduced any proof that TJX's policies and procedures regarding the preservation of surveillance footage depicting customer accidents was not followed on the accident date.

As for plaintiff's argument that she had no opportunity to learn this information unless voluntarily disclosed by TJX, it is preposterous. Indeed, Plaintiff had every opportunity to explore her claim over the course of more than two years of discovery. This included unfettered access to two former loss prevention employees (Mr. Conner and Mr. Robertson) who were identified as working at the time of the accident and, presumably, could have easily substantiated Plaintiff's claim, if actually true.

To the extent Plaintiff raises personal grievances with the form and substance of discovery provided by TJX, these contentions also have no merit. Certainly, if these purported issues were as significant and detrimental to her cause of action as Plaintiff claims, she would have sought redress from the District Court while discovery was open and ongoing, rather than raise them for the first time at the summary judgment stage.

### D. Plaintiff is Not Entitled to the Drastic Relief of Denial of TJX's Meritorious Summary Judgment Motion Even if Sanctions Could be Warranted under Federal Rule 37(e)

Even if this Honorable Court accepts Plaintiff's new and alternate argument for spoliation under Rule 37(e) and concludes that she satisfied all necessary elements, she still would not be entitled to reversal of the dismissal ordered by the District Court.

Plaintiff cites to no case law which holds that an appropriate remedy for a violation of Rule 37(e) is denial of an otherwise meritorious summary judgment motion. Indeed, the Rule itself does not explicitly provide for this type of relief:

> If electronically stored information that should have been preserved in the anticipation of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) Upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) Only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

    A. Presume that the lost information was unfavorable to the party

    B. Instruct the jury that it may or must presume the information was unfavorable to the party; or

    C. Dismiss the action or enter a default judgment.

Federal Rule 37(e).

For sanctions to issue under Subsection 37(e)(1), there must be sufficient evidence of prejudice caused by the alleged spoliation. Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *12 (S.D.N.Y. Dec. 19, 2017); ("Federal Rule of Civil Procedure 37(e)(1) permits the imposition of sanctions only when there is prejudice to another party from loss of the information"). This requires proof that the evidence claimed to have been spoliated was not only probative, but that it would have also affirmatively supported the claims of the party seeking sanctions. See Ungar v. City of New York, 329 F.R.D. 8, 15 (E.D.N.Y. 2018), affd, 2022 WL 10219749, at *3 (2d Cir. Oct. 18, 2022)(holding that plaintiff's request for Rule 37(e) sanctions was properly denied where he failed to establish, *inter alia*, that the location of the camera would have captured the assault and the officers' failure to protect him).

Here, there are no factual grounds from which to conclude that the alleged video of the accident would have served as the "smoking gun" needed to establish negligence on the part of TJX. As noted by the District Court, Plaintiff's own testimony failed to provide any evidence that TJX created or possessed the requisite notice of the stacked stools. A 261- 267. As such, there is no basis from which to conclude that video of the accident would support her otherwise unviable claim. Indeed, considering her nonsensical account of the accident involving stacked stools falling from beneath her as she sat on top of them, it is just as likely that any surveillance would evidence a non-negligent explanation for the accident. This includes Plaintiff stacking the stools herself in an attempt to stage the accident, which is not outside the realm of possibility considering her prior history of engaging in fraud.[6] Similarly, it could have also demonstrated a customer stacking the stools moments before the accident.

To the extent Plaintiff argues that she is excused from proving the contents of the video as it is the only evidence that would vindicate her claim, such a contention is purely conclusory. Contrary to Plaintiff's claim, there is no evidence that the "missing video…would have revealed who stacked the

---

[6]   See   https://www.nydailynews.com/new-york/sexual-assault-accuser-ex-amazon-exec-faces-blackmail-rap-article-1.2690555

stools and how long they had been stacked before plaintiff arrived."
Appellant's Br. 23. Even if video did exist and revealed who stacked the stools
and when, it is just as plausible that the answers to these questions would be
unfavorable to Plaintiff's claim as detailed *supra*. To that end, Plaintiff's
insistence that the "[t]he missing video is the only evidence that plaintiff
lacks" represents nothing more than a desperate hope in the complete absence
of any supporting proof, circumstantial or otherwise. Appellant's Br. 27.
Thus, Plaintiff is also unable to establish that an imposition of sanctions
pursuant to Rule 37(e)(1) would be appropriate and warranted. See Ungar,
supra.

If, for argument's sake, Subsection 37(e)(2) was applied, the result
would be the same. Imposition of the "particularly harsh" sanctions available
under this subsection requires the party seeking such relief to demonstrate that
the spoliating party acted with the intent to deprive by clear and convincing
evidence. See CAT3, LLC v. Black Lineage, Inc., 164 F Supp 3d 488
(S.D.N.Y. 2016)( finding that, where a party seeks sanctions pursuant to Rule
37(e)(2), it is appropriate to utilize the clear and convincing standard in
making a finding of intent to deprive).

Here, Plaintiff openly concedes that she is unable to establish intent to
deprive under this stringent standard. Appellant's Br. 25 ("In this case, the

facts and circumstances are unknown (other than the fact that the recordings existed and now don't)…"). While Plaintiff seeks to place the blame for her lack of knowledge solely on TJX, her reasoning amounts to nothing more than the same meritless discovery grievances that were never raised to the District Court.

In reality, the ample discovery conducted, including depositions of multiple witnesses and disclosure of two former employees who would have been responsible for reviewing the surveillance system on the date of the accident, failed to reveal one iota of evidence that relevant footage ever existed, let alone that TJX intentionally deprived Plaintiff of same. See Fashion Exch. LLC v. Hybrid Promotions, LLC, 2021 WL 1172265, at *7 (S.D.N.Y. Mar. 29, 2021)("[W]ithout evidence of affirmative conduct that Fashion Exchange deliberately disposed of its documents, Magistrate Judge Wang made the reasonable conclusion that Rule 37(e)(2) sanctions were unwarranted."). As Plaintiff has failed to satisfy her sole burden to prove that TJX acted with the intent to deprive by clear and convincing evidence, there can be no basis for the imposition of a sanction under Subsection 37(e)(2). See Ungar, supra (holding that plaintiff's failure to establish that defendant acted with the requisite intent to deprive was fatal to his request for sanctions under Subsection 37(e)(2)).

## **CONCLUSION**

For all the foregoing reasons, the Judgement of the District Court should be affirmed.

Dated: Hauppauge, New York
      February 26, 2024

Respectfully submitted,

**SIMMONS JANNACE DELUCA, LLP**

BY: * /s/ Allison  C.  Leibowitz*
      ALLISON C. LEIBOWITZ
Attorneys for Defendant-Appellee
THE TJX COMPANIES, INC.
**Office & P.O. Address:**
43 Corporate Drive
Hauppauge, New York 11788
(631) 873-4888

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C) OF THE FEDERAL RULES OF APPELLATE PROCEDURE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 6,746 words, as counted by the Microsoft Word processing system that was used in preparation of the within brief, and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated: Hauppauge, New York
February 26, 2024

Respectfully submitted,

**SIMMONS JANNACE DELUCA, LLP**

BY: _/s/ Allison C. Leibowitz_
_____
ALLISON C. LEIBOWITZ
Attorneys for Defendant-Appellee
THE TJX COMPANIES, INC.
**Office & P.O. Address:**
43 Corporate Drive
Hauppauge, New York 11788
(631) 873-4888